IN THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| **STEFON DIGGS** | * | |
| c/o Rifkin Weiner Livingston LLC | * | |
| 7700 Wisconsin Avenue, Suite 320 | * | |
| Bethesda, Maryland 20814, | * | |
| | * | C-15-CV-25-005440 |
| Plaintiff, | * | |
| v. | * | Civil Action No. _____ |
| | * | |
| **CHRISTOPHER BLAKE GRIFFITH** | * | **JURY TRIAL DEMANDED** |
| 755 S. Spring Street, Apt. 1630 | * | |
| Los Angeles, California 90014, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT**
(Defamation – Libel; Intentional Infliction
of Emotional Distress; Intentional Interference With Contractual
Relations; Intentional Interference With Prospective Economic Advantage)

Plaintiff Stefon Diggs ("Plaintiff"), by and through his counsel, Charles S. Fax, Barry Gogel, and the law firm of Rifkin Weiner Livingston, LLC,[1] for his Complaint against Defendant Christopher Blake Griffith ("Defendant"), states as follows:

**THE PARTIES**

1. Plaintiff Stefon Diggs, a native of Gaithersburg, Maryland, grew up in Montgomery County and attended Our Lady of Good Counsel High School. He then went to the University of Maryland, where he became a football standout. Today, Plaintiff is a star wide receiver for the New England Patriots in the National Football League. He is also a philanthropist, having established the Diggs Deep Foundation, a charitable organization designed to provide immediate

---

[1] Motions will be filed seeking entry of appearances *pro hac vice* for Mitchell Schuster and Kevin M. Hutzel, members of the law firm of Meister Seelig & Fein PLLC.

and ongoing emotional support and financial assistance to children and their families in the Washington, D.C. area. Plaintiff is also the founder of a luxury fashion house, Liem Homme, which he established in 2022 as an outlet to express his artistic sensibilities and vision in the world of fashion. Plaintiff maintains a home in Maryland, and he has family and friends there.

2. Defendant Christopher Blake Griffith is a would-be social media influencer on the internet determined to "go viral"[2] by falsely accusing Plaintiff of depraved and serious criminal activity. On information and belief, Defendant routinely uses the social media handle "chrisblakegriffith". Upon further information and belief, Defendant is a resident of Los Angeles County, California.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 6-103(b)(3) and (4). Defendant has committed – and continues to commit – tortious acts against Plaintiff in Maryland; has directed – and continues to direct – tortious electronic communications at Plaintiff in Maryland causing tortious injury to Plaintiff in Maryland; regularly directs computer information and messages to Maryland; and by purposefully availing himself of the privilege of conducting such activities in Maryland, has subjected himself to the laws of Maryland. Plaintiff's claims in this Complaint arise out of Defendant's tortious conduct in Maryland referenced in this paragraph and described in detail below.

4. Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(8) and (11), as Defendant is not a resident of the State of Maryland and can be sued in any county in the State. Further, Plaintiff's claims arise in Montgomery County, Maryland, where damages have been incurred.

---

[2] This term describes content that gains massive popularity online due to users sharing and resharing the content.

5. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**NATURE OF ACTION**

6. This case is about dangerous lies about Plaintiff that Defendant, fueled by greed and a misguided hunger for vengeance, is increasingly and incessantly perpetuating across social media to tens – if not hundreds – of thousands of people, including countless residents of Montgomery County, Maryland. The statements made by Defendant about Plaintiff giving rise to this action are pure fiction. Defendant's misconduct toward Plaintiff has been and continues to be intentional, willful, wanton and malicious, and in reckless disregard of the truth – aiming to inflict serious personal injury on Plaintiff.

7. Defendant's outrageous misconduct toward Plaintiff has caused him deep, immediate, immeasurable and ongoing damage.

8. Plaintiff and Defendant are acquaintances. On May 20, 2023, the Diggs Deep Foundation (the "Foundation") held a charity basketball game in Washington D.C., which drew over 600 attendees (the "Event") and raised $30,000 that was donated to an organization dedicated to building a safety net for single mothers, enabling them to better provide for their families.

9. Plaintiff invited Defendant to attend the Event, along with other attendees with social media presence, hoping to bring attention to the Foundation and its cause.

10. By all accounts, the Event was extremely successful. After the game, a group including Defendant went to Plaintiff's house in Rockville, Maryland.

11. Plaintiff was not present when the group arrived. His assistant was there, however, and went into Plaintiff's bedroom to retrieve an item for one of the guests. There she found Defendant – who did not have permission to enter Plaintiff's bedroom – prying around. Caught red-handed, Defendant lied and stated that Plaintiff had invited him to take a tour when he got to

3

the house.

12. Plaintiff's assistant rightfully suspected that Defendant was lying. She asked him to leave the bedroom and told him to join the group downstairs.

13. At some point, Plaintiff arrived at the house and headed back out to a club. Defendant joined him.

14. Meanwhile, back at the house, Plaintiff's assistant discovered that Defendant, who had been seen earlier emerging from the basement carrying a suitcase, had been collecting Plaintiff's belongings and property, and appeared to be preparing to leave with those items.

15. When Plaintiff and Defendant returned from the club, Plaintiff retired to his bedroom unaccompanied.

16. Thereafter, Plaintiff's assistant and Plaintiff's brother asked Defendant to leave the premises, and hailed a rideshare to the airport for him.

17. One week later, on May 29, 2023, in Los Angeles, Defendant accused Plaintiff's brother and two other individuals of attacking him at his apartment building. Plaintiff was not there, nor was he in California, at the time of that purported incident. Plaintiff had no knowledge of, nor any involvement in, what Defendant alleges occurred and/or what may or may not in fact have occurred that day.

18. On information and belief, on or about October 16, 2024, in retaliation for whatever may have occurred between Plaintiff's brother and Defendant on May 29, 2023 in Los Angeles, Defendant concocted a seedy and lurid story surrounding the night of the Event (which had taken place seventeen months earlier) and contacted the Montgomery County Police Department in Maryland to make a false police report against Plaintiff based on that concocted story.

19. Unsurprisingly, the Montgomery County Police took no action against Plaintiff

4

after the false police report was made. Ever since then, Defendant has embarked on a social media rampage targeting Plaintiff, his good name, reputation and livelihood.

20.    On or after August 8, 2025, Defendant published the story[3] attached as **Exhibit A** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. **Exhibit A** reflects an unprivileged republication of false and defamatory statements by Defendant about Plaintiff. Initially, these false statements were made by Defendant offline to law enforcement, and, as noted above, did not result in any criminal charges because the allegations were baseless. Undeterred and on a mission, however, Defendant is now using social media to repeat his fabrications against Plaintiff in a public forum. Specifically, **Exhibit A** is an image of page 3 of 4 from a MCPD Incident Report, to which Defendant has added commentary and social media handles. Plaintiff is informed and believes and thereon alleges that the statements therein are an accurate reproduction of statements originally made by Defendant offline. <u>Regardless, by publishing the story in **Exhibit A** on social media, Defendant made and published the statements anew to the public at large in a public forum such that the false statements in **Exhibit A** are unprivileged.</u>

21.    **Exhibit A** includes the following **false** statements made by Defendant about Plaintiff:

- "Stefon Diggs drugged and sexually assaulted me on May 22, 2023, and then one week later he conspired to have me killed on May 29, 2023 to suppress his gay/bisexual secrets from becoming exposed after I denied his sexual advances and now knew his secret."

- "He'd offered me all sorts of candy throughout the night that I didn't know was laced w/ drugs."

- "That 'candy' (drug) he gave me made my pupils so big I couldn't

---

[3] On the Instagram platform, a "story" refers to temporary content that is displayed for 24 hours, unless the user (or a third party) preserves it; whereas, a "post" refers to content that remains visible on a user's profile indefinitely.

even see my eye color, made my skin tingle to the touch, made my body pulsate to music, increased my sex drive in INTENSE form, made it hard for me to form words into sentences, amongst other things."

- "he put his arm around me, put his tongue in my ear in a 'kissing' fashion while whispering to me to come to his room."

- "He put his arm around me like a brother would do, which is why I didn't find it odd, but when his arm was around me he was gripping my shoulder, forcefully pulling me closer to him which took away the distance that was once between us, then pulled this move."

- "I found it harder than normal to exert force because of whatever substance he'd drugged me with, and he likely was expecting me at this point to be sedated by whatever he drugged me w/ earlier in the night."

- "With an ear drenched in his saliva, and now realizing I'd been drugged, we walked into his residence. He went left and walked up a spiral staircase to his bedroom, while I ran right down a long hallway lo the bathroom that was at the end of this hallway and for 45 minutes, I was splashing water on my face trying to sober up from whatever he drugged me with while trying to plan my escape from his enormous property."

- "I came out of the bathroom, and was confronted by 2 women and 1 male who asked me to corroborate a story. I was asked several times. 'So what are you gonna say when you leave here?!' I was asked to regurgitate the story they asked me to corroborate back to them repeatedly."

- "I was then stripped of my clothes, robbed of my belongings (robbed of things I care not mention until I speak to the active detective on my case), beaten, and forced in an [*sic*] car where I didn't even know the destination. I was robbed of my SILVER TITANIUM RIMOWA TRUNK, jewelry, and more. They stole a minimum of $30,000- $50,000 of my belongings from my suitcase and to avoid being further beaten, I did what was necessary in their eyes to support this fictional narrative they forced me to corroborate."

22. Moreover, **Exhibit A** reflects commentary added by Defendant to the story depicted therein, directed to three user accounts, tagged by their social media handles, specifically stating and identified as follows:

6

- "@ugg can you read?"
- "@nfl
  @patriots
  Y'all gon let Aaron Hernandez 2.0 just run wild without penalty? I'm aware that you're aware. & since we're BOTH aware, let's act accordingly!"

23.     On or after August 8, 2025, Defendant published the story attached as **Exhibit B** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. **Exhibit B** is an unprivileged republication of false and defamatory statements by Defendant about Plaintiff. Initially, these false statements were made by Defendant offline to law enforcement. These false and defamatory statements did not result in criminal charges against Plaintiff because Defendant's accusations lacked merit. Undeterred and on a mission, Defendant is now using social media to repeat his fabrications against Plaintiff in a public forum. Specifically, **Exhibit B** is an image of page 4 of 4 from a MCPD Incident Report, to which Defendant has added commentary and social media handles. Plaintiff is informed and believes and thereon alleges that the statements therein are an accurate reproduction of statements originally made by Defendant offline. <u>Regardless, by publishing the story in **Exhibit B** on social media, Defendant made and published the statements anew to the public at large in a public forum such that the false statements in **Exhibit B** are unprivileged</u>.

24.     **Exhibit B** includes the following **false** statements made by Defendant about Plaintiff:

- "belongings from my suitcase and to avoid being further beaten, I did what was necessary in their eyes to support their fictional narrative they forced me to corroborate."

- "The car dropped me off at the airport in the worst clothes you could imagine and I was grateful to have made it out alive. I got flight at the airport and traveled back home to LA traumatized."

- "One week later, the hit Stefon Diggs sent out on my life, which was downgraded to an armed aggravated robbery since they couldn't pull it off, occurred at my

7

      apartment located at 755 S Spring St, Los Angeles, CA, 90014."

- "I spoke out bc they've been smearing my name amongst the industry and I'm fed up w/ protecting my abuser."

- That Plaintiff "is operating a 'sex ring' out of his residence."

- "The person closely assisting him in these crimes is his illegal immigrant assistant - Lindsay Dawn Bolland that helps him carry out these acts. It's a very 'Ghislane Maxwell' esque role she plays where she practices witchcraft on the sexual subjects to prepare them for Stefon."

    25.    Additionally, **Exhibit B** reflects the commentary added by Defendant to the story depicted therein, directed to three user accounts, tagged by their social media handles, specifically stating and identified as follows:

- "@nfl
  @patriots
  @ugg
  . . .you still don't hear me?"

    26.    On or about July 30, 2025, Defendant published the story attached as **Exhibit C** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. **Exhibit C** is an unprivileged republication of false and defamatory statements by Defendant about Plaintiff. Initially, these false statements were made by Defendant offline to law enforcement. These false and defamatory statements did not result in criminal charges against Plaintiff because Defendant's accusations lacked merit. Undeterred and on a mission, Defendant is now using social media to repeat his fabrications against Plaintiff in a public forum. Specifically, **Exhibit C** is an image of a page from an MCPD Incident Report, to which Defendant has added commentary. The image in **Exhibit C** is a verbatim republication of Defendant's statements posted by an online blogger with the username "GOT DA SCOOP".

Plaintiff is informed and believes and thereon alleges that the statements therein are an accurate reproduction of statements originally made by Defendant offline. <u>By publishing the story in **Exhibit C** on social media, Defendant made and published the statements anew to the public at large in a public forum such that the false statements in **Exhibit C** are unprivileged</u>.

27. **Exhibit C** includes the following **false** statements made by Defendant about Plaintiff:

- "PUT TONGUE IN EAR IN A KISSING FASHION"

28. **Exhibit C** also includes additional text beneath the image it depicts that is an obvious coded message to and about Plaintiff. It states: "They mistake my silence for weakness & equate their money/fame to 'power'. PSA: You're only as powerful as your subject ALLOWS you to be."

29. On or around July 30, 2025, Defendant published the story attached as **Exhibit D** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. **Exhibit D** is a collage containing a mixture of images, displayed on a split screen, with commentary added by Defendant above and/or beneath the images. **Exhibit D** includes the following false statements made by Defendant about Plaintiff:

- "YOU can even be bisexual, or gay, or whatever you wanna be in life – as I champion you living ya truth …
  [ ]
  …that said – when I continually decline your advances and attempts to get me to 'party-party' with you, your ego can't handle 'no' and resorted to violence to protect what you seem to be so afraid to admit."

30. **Exhibit D** is a post from an online blogger with the username "GOT DA SCOOP" which re-shared Defendant's story. Plaintiff is informed and believes and thereon alleges that the post re-sharing Defendant's story is an accurate reproduction of the statements originally made and published by Defendant online as recounted above and as reflected verbatim in **Exhibit D**.

9

31. On or around July 30, 2025, Defendant published the story attached as **Exhibit E** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. In **Exhibit E**, Defendant falsely calls Plaintiff a "conspirator". Moreover, **Exhibit E**, includes the following **false** statement by Defendant about Plaintiff:

- "Stefon Diggs has a history of drugging people at his private parties."

32. Specifically, **Exhibit E** is a post from an online blogger with the username "GOT DA SCOOP" which re-shared Defendant's story, including the above statements verbatim. Plaintiff is informed and believes and thereon alleges that the re-shared story is an accurate reproduction of the statements originally made and published by Defendant online as recounted above and as reflected verbatim in **Exhibit E**.

33. On or about July 30, 2025, Defendant published the story attached as **Exhibit F** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. In **Exhibit F**, Defendant shared an advertisement for the brand UGG, featuring Plaintiff and another celebrity, in a story, and added his own commentary above it, punctuated with two emojis: one of a nauseated face and one vomiting face.

34. **Exhibit F** included the following **false** statements made by Defendant about Plaintiff:

- "Sooooo Stefon Diggs drugged me, attempted to sexually assault me, and then conspired w/ his employees/hitmen to organize an attack on my life . . ."

## COUNT ONE
(Defamation *per se*)

35. Plaintiff incorporates the allegations in paragraphs 1 through 34 as though fully stated herein.

36. The statements made by Defendant as described above and as reflected in **Exhibits A through F**, falsely accusing Plaintiff of criminal conduct including of drugging people, sexual misconduct, and violence, are individually and collectively false, unprivileged, and defamatory *per se*.

37. The defamatory published statements were widely disseminated on the internet and viewed by the public, including persons in Maryland.

38. The statements were defamatory *per se* in that the defamatory quality of the statements is apparent from the words themselves.

39. The statements were not made with an honest belief that they were true at the time they were made.

40. The statements were not opinion.

41. Plaintiff did not consent to publication of the statements.

42. The statements were not protected by any privilege recognized by Maryland law.

43. At all relevant times, Defendant's conduct was with actual and constitutional malice in that he acted deliberately, intentionally, willfully, recklessly, with ill-will or spite, with actual knowledge of the falsity, and in a grossly negligent fashion, entitling Plaintiff to an award of punitive damages.

44. As a proximate result of Defendant's conduct, Plaintiff has suffered general damages, which may be presumed by the jury, as well as special damages, including loss of reputation, public humiliation, emotional distress, and economic loss.

## COUNT TWO
(Defamation *per quod*)

45. Plaintiff incorporates the allegations in paragraphs 1 through 34 as though fully stated herein.

11

46. The statements made by Defendant as described above and as reflected in **Exhibits A through F**, falsely accusing Plaintiff of criminal conduct including of drugging people, sexual misconduct, and violence, are individually and collectively false, unprivileged, and defamatory *per quod*.

47. The defamatory published statements were widely disseminated and viewed by the public.

48. The statements were defamatory *per quod* in that they tended to expose Plaintiff to public scorn, hatred, contempt or ridicule, effectively discouraging others in the community from having a good opinion of or associating with Plaintiff.

49. The statements were not made with an honest belief that they were true at the time they were made.

50. The statements were not opinion.

51. Plaintiff did not consent to the publication of the statements.

52. The statements were not protected by any privilege recognized by Maryland law.

53. At all relevant times, Defendant's conduct was with actual and constitutional malice in that he acted deliberately, intentionally, willfully, recklessly, with ill-will or spite, with actual knowledge of the falsity, and in a grossly negligent fashion.

54. As a proximate result of Defendant's conduct, Plaintiff has suffered general and special damages, including loss of reputation, public humiliation, emotional distress, and economic losses.

## COUNT THREE
(Intentional Infliction of Emotional Distress)

55. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 34 as though fully stated herein.

56. Defendant engaged in extreme and outrageous conduct by knowingly publishing false statements accusing Plaintiff of violence, sexual assault, drugging people, and serious crimes.

57. In doing so, Defendant intended to cause, or acted with reckless disregard of the probability of causing, Plaintiff severe emotional distress.

58. As a direct result, Plaintiff suffered severe emotional distress, including anxiety, anguish, humiliation, loss of professional standing, and other damages.

59. At all relevant times, Defendant's conduct was willful, malicious, and oppressive with actual malice in that he acted deliberately, intentionally, willfully, recklessly, with ill-will or spite, and in a grossly negligent fashion, entitling Plaintiff to punitive damages.

## COUNT FOUR
(Intentional Interference With Contractual Relations)

60. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 34 as though fully stated herein.

61. On or after June 2, 2025, Defendant intentionally and willfully published the story attached as **Exhibit G** to social media, making it visible to and widely shared with his followers and others who know Plaintiff, including readers in Maryland. In **Exhibit G**, Defendant reshared a post from another platform made by another user account, in which that other user account parroted Defendant's false allegations about Plaintiff.

62. Moreover, **Exhibit G** reflects the commentary added by Defendant to the story depicted therein, directed to four user accounts, tagged by their social media handles, specifically stating and identified as follows:

- "@nfl
- @patriots

    Flag on the play. . . [red flag emoji]"

13

- "@ugg y'all let a goddess like @sarahjessicaparker shoot w/ this guy?!"

63. At the time Defendant published **Exhibits A, B, F, and G**, Plaintiff had valid and enforceable endorsement contracts with multiple companies. Many, if not all of these contracts include strict morality clauses resulting in financial and/or legal consequences for Plaintiff, including possible termination of the underlying business relationship and potential financial liability, in the event of public scandal or involvement in publicly contemptuous, offensive, or disreputable situations.

64. Defendant knew and/or should have known of Plaintiff's professional and commercial relationships.

65. Defendant intentionally and willfully, and without right or justifiable cause, published the false and scandalous statements described above for the calculated purpose of causing damage to Plaintiff in his lawful business by harming Plaintiff's public image and professional relationships, and did so with the intent to disrupt the performance of these contracts, and/or because Defendant knew or should have known that such disruption was certain or substantially certain to occur based on Defendant's actions.

66. On information and belief, as a direct and proximate result of Defendant's interference and disruption, Defendant's conduct has prevented performance or made performance of Plaintiff's endorsement contracts more expensive or difficult, and/or continuation of such contracts has been placed in danger.

67. Plaintiff has been harmed, suffering general and special damages.

68. Defendant's conduct has been a substantial factor in causing Plaintiff's harm.

69. At all relevant times, Defendant acted with actual malice in that he acted deliberately, intentionally, willfully, recklessly, with ill-will or spite, and in a grossly negligent fashion, entitling Plaintiff to punitive damages.

## COUNT FIVE
(Intentional Interference with Prospective Economic Advantage)

70. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 34 as though fully stated herein.

71. Plaintiff had an existing and ongoing expectation of entering into future commercial relationships and endorsement deals with various entities in the entertainment, fashion, sports, and consumer goods industries, based on Plaintiff's public image and marketability.

72. Defendant knew or should have known of Plaintiff's standing in the industry and the high likelihood of Plaintiff entering into such agreements.

73. Defendant, with knowledge of this economic expectancy, intentionally, willfully and wrongfully engaged in conduct calculated to cause damage to Plaintiff in a loss of business, including disruption or destruction of those prospective relationships, namely, by publishing false, scandalous accusations of criminal conduct that would cause potential business partners to distance themselves from Plaintiff.

74. Defendant's conduct was committed with the unlawful or improper purpose to cause such damage, without justification or right.

75. Defendant's conduct was independently wrongful in that it included the publication of defamatory statements about Plaintiff and the intentional infliction of emotional distress upon his person. By engaging in this conduct, Defendant intended to disrupt and did disrupt these relationships or knew that disruption of these relationships was certain or substantially certain to occur.

15

76. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff's prospective business relationships were disrupted or lost, and will continue to be so disrupted and lost, resulting in significant economic harm, reputational damage, and diminished professional opportunities and economic losses.

77. At all relevant times, Defendant acted with actual malice in that he acted deliberately, intentionally, willfully, recklessly, with ill-will or spite, and in a grossly negligent fashion, entitling Plaintiff to punitive damages.

78. As a direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered lost business opportunities, loss of future income, and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A. For all damages, including presumed damages, general damages, compensatory damages and special damages, including but not limited to damages for reputational harm, emotional distress and loss of goodwill, in amounts to be determined by a jury at trial, in excess of $75,000 exclusive of interest and costs;

B. For punitive and exemplary damages to the extent permitted by law;

C. For costs of suit incurred herein;

D. For pre-judgment and post-judgment interest as permitted by law;

E. For injunctive relief prohibiting Defendant from further publishing or disseminating the false and defamatory statements, as permitted by law; and

F. For such other and further relief as the Court may deem just and proper.

                                           /s/      Charles S. Fax
                                           Charles S. Fax (CPF No. 9006040006)
                                           Rifkin Weiner Livingston LLC
                                           7700 Wisconsin Avenue, Suite 320
                                           Bethesda, Maryland 20814
                                           cfax@rwllaw.com

                                        Telephone: (301) 951-0150
                                        Cell Phone: (410) 274-1453

                                        /s/      Barry L. Gogel
                                        Barry L. Gogel (CPF No. 9712160288)
                                        Rifkin Weiner Livingston LLC
                                        502 Washington Ave., Suite 405
                                        Baltimore, Maryland 21204
                                        bgogel@rwllaw.com
                                        Telephone: (410) 769- 8080
                                        Cell Phone: (410) 530-8658

                                        Attorneys for Plaintiff Stefon Diggs

Dated: October 1, 2025

Of Counsel:

Mitchell Schuster*
Meister Seelig & Fein
125 Park Avenue, 7th Floor
New York, New York 10017
ms@msf-law.com
Telephone: (212) 655-3500

Kevin M. Hutzel*
Meister Seelig & Fein
125 Park Avenue, 7th Floor
New York, New York 10017
kmh@msf-law.com
Telephone: (212) 655-3500

## JURY DEMAND

    Plaintiff Stefon Diggs demands a trial by jury on all counts that are so triable by law.

                                        /s/   Charles S. Fax
                                        Charles S. Fax

_____

\* Attorneys Schuster and Hutzel are members of the New York bar, and are not members of the Maryland bar. A motion for their admission *pro hac vice* will be filed promptly.